THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT CROCKETT, JEFF CLOUTIER, ROBERT W. KIRK, and LEVI FIGUEROA, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE BOEING COMPANY, a Delaware corporation, and DOES 1-20,<br><br>Defendants. | No. 3:25-cv-06073-BHS<br><br>SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT FOR DAMAGES |

Plaintiffs claim against Defendants as follows:

## I. NATURE OF ACTION

1.1. Robert Crockett, Jeff Cloutier, Robert W. Kirk, and Levi Figueroa ("Plaintiffs") individually and on behalf of all those similarly situated, bring this action against The Boeing Company and yet-to-be identified DOES (collectively, "Boeing" or "Defendants") for unpaid wages, double damages, prejudgment interest, and other statutory relief under Washington's Minimum Wage Act ("MWA"), RCW 49.46, Wage Payment Act ("WPA"), RCW 49.48, Wage Rebate Act ("WRA"), RCW 49.52, Industrial Welfare Act ("IWA"), RCW 49.12, related regulations, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 206, 207, and 216.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

1.2. This is a statewide class action for unpaid wages under Washington law and a collective action under the FLSA.

1.3. This case challenges Boeing's statewide pay practices that require hourly employees to be under company control and subject to company compliance obligations inside secured facilities before and after clocking in, without pay for that time.

1.4. Plaintiffs and other Class Members are required to comply with Boeing's safety and operational rules immediately upon entering and until exiting its secured facilities. Those requirements included but were not limited to wearing safety equipment, following designated routes, and adhering to all posted safety and conduct standards.

1.5. Boeing fails to pay Plaintiffs and other Class Members for all hours worked by failing to compensate Plaintiffs and other Class Members for all time they record in timeclocks and, instead, only paying them for their scheduled shifts.

1.6. Plaintiffs allege that the time spent under these conditions constitutes compensable "hours worked" under RCW 49.46 and WAC 296-126-002(8), for which Boeing failed to provide lawful wages.

1.7. Plaintiffs and other Class Members are not compensated for meal and rest period violations.

## II. PARTIES

2.1. Boeing is an American multinational corporation that designs, manufactures, and sells airplanes, rotorcraft, rockets, satellites, and missiles worldwide. It is organized as a Delaware corporation with its corporate headquarters located in Arlington, Virginia. Boeing is registered to do business in Washington state and maintains substantial operations in King, Snohomish, and Pierce Counties, including secured manufacturing and assembly facilities employing thousands of Washington hourly workers.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

2.2. Defendants operate business under various named including, but not limited to, "The Boeing Company," "Boeing Commercial Airplanes," Being Defense, Space & Security," "BCA," "Boeing Global Services," and/or "Boeing."

2.3. At all relevant times, Plaintiffs Robert Crockett, Jeff Cloutier, and Robert W. Kirk were employed by Boeing in the State of Washington in hourly positions at secured facilities requiring controlled access and compliance with Boeing's safety and operational rules. Plaintiff Figueroa was employed by Boeing in the State of Washington in an hourly position at secured facilities requiring controlled access and compliance with Boeing's safety and operational rules from approximately April 2022 to February 2023.

2.4. Plaintiff Crockett is an individual over the age of eighteen and, at all times mentioned in this Complaint was a resident of Washington state, residing in Shoreline, Washington.

2.5. Plaintiff Cloutier is an individual over the age of eighteen and, at all times mentioned in this Complaint was a resident of Washington state, residing in Enumclaw, Washington.

2.6. Plaintiff Kirk is an individual over the age of eighteen and, at all times mentioned in this Complaint was a resident of Washington state, residing in Renton, Washington.

2.7. Plaintiff Figueroa is an individual over the age of eighteen and, at all times mentioned in this Complaint was a resident of Washington state, residing in Tacoma, Washington.

## III. JURISDICTION AND VENUE

3.1. This Court has jurisdiction over Plaintiffs' and other Class Members' claims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 because (1) minimal diversity of citizenship exists between at least one Class Member and the Defendants; (2) the aggregate number of Class Members in the proposed Class is 100 or greater; and (3) the Complaint places in controversy more than $5 million, exclusive of interest and costs.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

3.2. This Court possesses original subject matter jurisdiction over Plaintiffs' claims made pursuant to the Fair Labor Standards Act, 29 U.S.C. sections 206, 207, and 216.

3.3. Boeing transacts substantial and continuous business within the State of Washington. The unlawful wage and hour practices alleged herein occurred within Washington, where Plaintiffs and other Class Members worked and were paid.

3.4. Although Boeing is incorporated in Delaware and maintains its corporate headquarters in Arlington, Virginia, it maintains substantial operations in King, Snohomish, and Pierce Counties, including secured manufacturing and assembly facilities employing thousands of hourly workers. The claims asserted in this action arise out of Boeing's employment practices at those Washington facilities.

3.5. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b), because Boeing employs Class Members and conducts business within the geographic area encompassing the Western District of the State of Washington, and a substantial part of the acts and/or omissions giving rise to the claims occurred in this District.

3.6. The claims asserted herein involve employees who worked in Washington, and concern conduct occurring within Washington.

## IV. CLASS DEFINITION

4.1. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this case as a class action against Defendants on behalf of the Class defined as follows:

> Class Definition: All individuals employed by The Boeing Company in the State of Washington in hourly positions at secured facilities requiring controlled access and compliance with company safety and operational rules, at any time from October 28, 2022, and thereafter.
>
> The Class may include one or more subclasses as warranted by discovery, including subclasses for specific secured facilities, claims, or job categories.

## V. FACTUAL ALLEGATIONS

5.1. Plaintiffs and other Class Members are or were employed by Boeing in the State of Washington in positions paid on an hourly basis at any time from October 28, 2022, and thereafter.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

5.2. Boeing has utilized and continues to utilize an electronic timekeeping system to record the hours worked by Plaintiffs and other Class Members.

5.3. As used herein, "secured facilities" refers to Boeing's manufacturing and assembly sites and all other controlled-access workplaces within Washington that require employee compliance with company safety and security rules upon entry.

5.4. Plaintiffs and other Class Members worked at Boeing's secured facilities. Access to these facilities was restricted to authorized personnel through controlled entry points.

5.5. Upon entering secured facilities, Plaintiffs and other Class Members were required to comply with Boeing's safety and operational rules, including the mandatory use of employer-issued and/or employer-approved protective equipment such as high-visibility vests, identification badges, and other items specified by Boeing policy.

5.6. Boeing required the use of this equipment because it was integral and indispensable to the safe performance of employees' assigned work. Plaintiffs and other Class Members could not perform their duties within Boeing's secured facilities without donning and continuously wearing the required equipment.

5.7. While inside secured facilities, Plaintiffs and other Class Members were required to keep their safety equipment on and comply with Boeing's posted safety and conduct rules, including requirements to remain in designated walkways, use authorized routes, and avoid restricted zones. Compliance with these rules was mandatory and subject to discipline.

5.8. Boeing located its employee timeclocks inside their secured facilities, beyond the points where employees were first required to comply with Boeing's safety and operational rules.

5.9. Plaintiffs and other Class Members were required to walk from the secured entry points to interior timeclocks before they could record compensable time. This walking occurred entirely within Boeing's controlled areas and while employees were required to comply with Boeing's safety and operational rules.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

5.10. After clocking in, Plaintiffs and other Class Members proceeded to their assigned work areas within the same secured environment. At the end of their shifts, they were required to clock out and walk back through the secured facilities to reach the facility exits, remaining subject to Boeing's safety and operational rules until they exited.

5.11. Boeing determined the placement of timeclocks and access points under centralized policies governing security, safety, and facility operations. Those policies were uniform across Boeing's Washington facilities and applied to Plaintiffs and other Class Members.

5.12. Boeing did not compensate Plaintiffs and other Class Members for spent within secured facilities before clocking in and after clocking out.

5.13. Plaintiffs and other Class Members were therefore not paid for the time they were required to spend on Boeing's premises, in compliance with Boeing's safety and operational requirements, before and after their recorded work hours.

5.14. Plaintiff Crockett is and has been employed by Boeing as a Lead Aircraft Mechanic in Boeing's production department during the entirety of the Class Period (*i.e.*, October 28, 2022, to present).

5.15. Plaintiff Crockett's work duties include, but are not limited to, ensuring that "lock-out-tag-out" for planes is in line with Boeing's procedures, reviewing milestones for planes, managing the "queue" for planes (*i.e.*, the system that tracks the work needed for planes), ordering parts, coordinating with suppliers, etc.

5.16. For all and/or nearly all shifts that Plaintiff Crockett worked at any of Boeing's secured facilities during the Class Period (*i.e.*, October 28, 2022, to present) Crockett was required to walk from secured entry points to interior timeclocks before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.17. For example, Crockett worked seven shifts from Thursday, September 18, 2025, to Wednesday, September 24, 2025. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.18. As an additional example, Crockett worked seven shifts from Thursday, October 16, 2025, to Wednesday, October 22, 2025. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.19. As an additional example, Crockett worked seven shifts from Thursday, October 23, 2025, to Wednesday, October 29, 2025. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.20. As an additional example, Crockett worked seven shifts from Thursday, October 30, 2025, to Wednesday, November 5, 2025. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.21. As an additional example, Crockett worked seven shifts from Thursday, November 13, 2025, to Wednesday, November 19, 2025. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.22. As an additional example, Crockett worked seven shifts from Thursday, November 20, 2025, to Wednesday, November 26, 2025. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.23. As an additional example, Crockett worked seven shifts from Thursday, December 18, 2025, to Wednesday, December 24, 2025. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.24. As an additional example, Crockett worked seven shifts from Thursday, January 8, 2026, to Wednesday, January 14, 2026. Crockett worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Crockett worked at one of Boeing's secured facilities like the Seattle Delivery Center, Crockett was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Crockett was required to comply with Boeing's safety and operational rules. Crockett estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 minutes each way (*i.e.*, 20 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

5.25. Plaintiff Cloutier is and has been employed by Boeing as an Aviation Maintenance Technician and Inspector in Boeing's quality assurance department during the entirety of the Class Period (*i.e.*, October 28, 2022, to present).

5.26. Plaintiff Cloutier's work duties include, but are not limited to, the following: troubleshoot, inspect, test, repair, service aircraft and engine systems to prepare aircraft for flight; Perform Quality functions such as Customer and DCMA Coordination, Configuration Change Verification, Conformity Inspections, Airworthiness Inspections (including Pre-flight and Post-flights), Corrective Action and Investigations; Initiate and document any nonconforming materials, hardware, software, tools, parts, assemblies, or portions thereof, according to specifications, processes, and procedures; Perform Aviation Maintenance Technician Inspector tasks in order to obtain and maintain knowledge, skills and required certifications; Initiate and document any nonconforming materials, hardware, software, tools, parts, assemblies, or portions thereof, according to specifications, processes, and procedures; and Perform audit/surveillance of all manufacturing and quality assurance processes, according to specifications, processes, and procedures.

5.27. For all and/or nearly all shifts that Plaintiff Cloutier worked at any of Boeing's secured facilities during the Class Period (*i.e.*, October 28, 2022, to present) Cloutier was required to walk from secured entry points to interior timeclocks before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.28. For example, Cloutier worked six shifts from Friday, May 9, 2025, to Thursday, May 15, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.29. As an additional example, Cloutier worked five shifts from Friday, June 6, 2025, to Thursday, June 12, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.30. As an additional example, Cloutier worked six shifts from Friday, June 13, 2025, to Thursday, June 19, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.31. As an additional example, Cloutier worked four shifts from Friday, June 20, 2025, to Thursday, June 26, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.32. As an additional example, Cloutier worked five shifts from Friday, September 12, 2025, to Thursday, September 18, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.33. As an additional example, Cloutier worked six shifts from Friday, September 19, 2025, to Thursday, September 25, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.34. As an additional example, Cloutier worked three shifts from Friday, October 10, 2025, to Thursday, October 16, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.35. As an additional example, Cloutier worked five shifts from Friday, October 17, 2025, to Thursday, October 23, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.36. As an additional example, Cloutier worked four shifts from Friday, November 14, 2025, to Thursday, November 20, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.37. As an additional example, Cloutier worked three shifts from Friday, November 21, 2025, to Thursday, November 27, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.38. As an additional example, Cloutier worked four shifts from Friday, November 28, 2025, to Thursday, December 4, 2025. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.39. As an additional example, Cloutier worked four shifts from Friday, January 2, 2026, to Thursday, January 8, 2026. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.40. As an additional example, Cloutier worked seven shifts from Friday, January 9, 2026, to Thursday, January 15, 2026. Cloutier worked all and/or substantially all of his shifts during this time period at "North Boeing Field," one of Boeing's secured facilities. For every shift during this time period that Cloutier worked at one of Boeing's secured facilities like North Boeing Field, Cloutier was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

and while Cloutier was required to comply with Boeing's safety and operational rules. Cloutier estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 10 to 15 minutes each way (*i.e.*, 20 to 30 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.41. Plaintiff Kirk is and has been employed by Boeing as an Aviation Maintenance Technician and Inspector in Boeing's quality assurance department during the entirety of the Class Period (*i.e.*, October 28, 2022, to present).

5.42. Plaintiff Kirk's work duties include, but are not limited to, the following: troubleshoot, inspect, test, repair, service aircraft and engine systems to prepare aircraft for flight; Perform Quality functions such as Customer and DCMA Coordination, Configuration Change Verification, Conformity Inspections, Airworthiness Inspections (including Pre-flight and Post-flights), Corrective Action and Investigations; Initiate and document any nonconforming materials, hardware, software, tools, parts, assemblies, or portions thereof, according to specifications, processes, and procedures; Perform Aviation Maintenance Technician Inspector tasks in order to obtain and maintain knowledge, skills and required certifications; Initiate and document any nonconforming materials, hardware, software, tools, parts, assemblies, or portions thereof, according to specifications, processes, and procedures; and Perform audit/surveillance of all manufacturing and quality assurance processes, according to specifications, processes, and procedures.

5.43. For all and/or nearly all shifts that Plaintiff Kirk worked at any of Boeing's secured facilities during the Class Period (*i.e.*, October 28, 2022, to present) Kirk was required to walk from secured entry points to interior timeclocks before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Kirk was required to comply



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

with Boeing's safety and operational rules. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.44. For example, Kirk worked seven shifts from Friday, September 12, 2025, to Thursday, September 18, 2025. Kirk worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Kirk worked at one of Boeing's secured facilities like Seattle Delivery Center, Kirk was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Kirk was required to comply with Boeing's safety and operational rules. Kirk estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 3 to 4 minutes each way (*i.e.*, 6 to 8 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.45. As an additional example, Kirk worked seven shifts from Friday, September 19, 2025, to Thursday, September 25, 2025. Kirk worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Kirk worked at one of Boeing's secured facilities like Seattle Delivery Center, Kirk was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Kirk was required to comply with Boeing's safety and operational rules. Kirk estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 3 to 4 minutes each way (*i.e.*, 6 to 8 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.46. As an additional example, Kirk worked seven shifts from Friday, October 3, 2025, to Thursday, October 9, 2025. Kirk worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Kirk worked at one of Boeing's secured facilities like Seattle Delivery Center, Kirk was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Kirk was required to comply with Boeing's safety and operational rules. Kirk estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 3 to 4 minutes each way (*i.e.*, 6 to 8 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.47. As an additional example, Kirk worked seven shifts from Friday, October 31, 2025, to Thursday, November 6, 2025. Kirk worked all and/or substantially all of his shifts during this time period at the "Seattle Delivery Center," one of Boeing's secured facilities. For every shift during this time period that Kirk worked at one of Boeing's secured facilities like Seattle Delivery Center, Kirk was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Kirk was required to comply with Boeing's safety and operational rules. Kirk estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately 3 to 4 minutes each way (*i.e.*, 6 to 8 minutes total for each of these shifts). Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.48. Plaintiff Figueroa was employed by Boeing and training to become an "Aircraft Structures Mechanic B" in Boeing's Everett Delivery Center during the Class Period (*i.e.*, October 28, 2022, to February 2023).

5.49. Plaintiff Figueroa's work duties include, but are not limited to, the following: completing various training courses, learning the various parts of airplanes, and obtaining certifications to permit him to move forward in his position as an Aircraft Structures Mechanic B.

5.50. For all and/or nearly all shifts that Plaintiff Figueroa worked at any of Boeing's secured facilities during the Class Period (*i.e.*, October 28, 2022, to present) Figueroa was required to walk from secured entry points to interior timeclocks before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Figueroa was required to comply with Boeing's safety and operational rules. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.51. For example, Figueroa worked five (5) shifts from Wednesday, December 14, 2022, to Thursday, December 22, 2022. Figueroa worked all and/or substantially all of his shifts during this time period at the Everett Production Facility (also referred to as the "Everett Delivery Center" or "EDC") one of Boeing's secured facilities. For every shift during this time period that Figueroa worked at one of Boeing's secured facilities like Everett Delivery Center, Figueroa was required to walk from a secured entry point to an interior timeclock before he could record compensable time. This walking occurred entirely within Boeing's controlled areas and while Figueroa was required to comply with Boeing's safety and operational rules. Figueroa estimates that, during this time period, the time spent walking from a secured entry point to an interior timeclock (at the beginning of a shift), and the time spent walking from an interior timeclock to a secured entry/exit point (at the end of a shift), was approximately ten (10) to fifteen (15) minutes each way (*i.e.*, twenty (20) to thirty (30) minutes total for each of these shifts). Boeing's failure to pay for that



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.52. The foregoing estimations are based on the best of Plaintiffs' recollections and estimations of walking time. Upon information and belief, Boeing maintains precise records of "badge in" and "badge out" times (i.e., when Plaintiffs and other Class Members enter and exit secured facilities and scan their badges) as well as precise records of when Plaintiffs and other Class Members "clocked in" and "clocked out."

5.53. Boeing intended for and knew that Plaintiffs and other Class Members were required to comply with these rules upon entering and while inside secured facilities before clocking in and after clocking out.

5.54. Boeing managers and supervisors observed Plaintiffs and other Class Members performing these required pre- and post-clock activities, including donning and continuously wearing safety equipment, traversing designated walkways, and following facility safety protocols.

5.55. Boeing trained managers, supervisors, and employees that safety compliance was mandatory at all times within secured facilities, regardless of whether an employee was clocked in.

5.56. Boeing had the ability to record and compensate all time Plaintiffs and other Class Members spent within secured facilities but chose not to for the time they spent walking from secured entry points to internal timeclocks, and conversely from internal timeclocks to secured exit points.

5.57. Boeing's decision to exclude this time from compensation was uniform, deliberate, and implemented across its secured facilities. Plaintiffs and other Class Members performed required duties and remained subject to Boeing's control during that uncompensated time.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.58. Boeing knew that Plaintiffs and other Class Members were required to comply with its safety and operational rules and to perform mandatory activities within secured facilities before clocking in and after clocking out.

5.59. Boeing's decision to exclude this time from compensation was deliberate and reflected a uniform corporate policy adopted to reduce labor costs, not the result of administrative oversight, clerical error, or a bona fide legal or factual dispute.

5.60. For example, for the seven shifts Crockett worked from Thursday, September 18, 2025, to Wednesday, September 24, 2025, Boeing did not compensate Plaintiff Crockett with wages for the approximately 10 minutes he spent walking from a secured entry point to an interior timeclock (at the beginning of his shifts), and Boeing did not compensate Crockett with wages for the approximately 10 minutes he spent walking from an interior timeclock to secured entry/exit points (at the end of his shifts). Boeing excluded Crockett's walk time from his wages, and this exclusion, for these seven shifts, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Crockett with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.61. As an additional example, for the six shifts Cloutier worked from Friday, May 9, 2025, to Thursday, May 15, 2025, Boeing did not compensate Plaintiff Cloutier with wages for the approximately 10 to 15 minutes he spent walking from a secured entry point to an interior timeclock (at the beginning of his shifts), and Boeing did not compensate Cloutier with wages for the approximately 10 to 15 minutes he spent walking from an interior timeclock to secured entry/exit points (at the end of his shifts). Boeing excluded Cloutier's walk time from his wages, and this exclusion, for these six shifts, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Cloutier with these wages was contrary to Washington law, in particular WAC 296-126-002(8).



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

5.62. As an additional example, for the seven shifts Kirk worked from Friday, September 12, 2025, to Thursday, September 18, 2025, Boeing did not compensate Plaintiff Kirk with wages for the approximately 3 to 4 minutes he spent walking from a secured entry point to an interior timeclock (at the beginning of his shifts), and Boeing did not compensate Kirk with wages for the approximately 3 to 4 minutes he spent walking from an interior timeclock to secured entry/exit points (at the end of his shifts). Boeing excluded Kirk's walk time from his wages, and this exclusion, for these seven shifts, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Kirk with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.63. For example, for the seven shifts Figueroa worked from Wednesday, December 14, 2022, to Thursday, December 22, 2022, Boeing did not compensate Plaintiff Figueroa with wages for the approximately ten (10) to fifteen (15) minutes he spent walking from a secured entry point to an interior timeclock (at the beginning of his shifts), and Boeing did not compensate Figueroa with wages for the approximately ten (10) to fifteen (15) minutes he spent walking from an interior timeclock to secured entry/exit points (at the end of his shifts). Boeing excluded Figueroa's walk time from his wages, and this exclusion, for these seven shifts, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Figueroa with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.64. Boeing did not compensate Plaintiffs and other Class Members with wages for the time Plaintiffs and other Class Members spent walking from secured entry points to interior timeclocks (at the beginning of their shifts), and Boeing did not compensate Plaintiffs and other Class Members with wages for the time Plaintiffs and other Class Members spent walking from interior timeclocks to secured entry/exit points (at the end of their shifts). Boeing knowingly, purposely, and intentionally excluded Plaintiffs' and other Class Members' walk time from their wages. This exclusion was not the result of carelessness or error, whether administrative, clerical,



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Plaintiffs and other Class Members with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.65. Boeing's management and human resources personnel were aware that Plaintiffs and other Class Members performed these activities on Boeing's premises under Boeing's control and that this time was not included in compensable hours.

5.66. There is no legitimate or reasonably debatable dispute, whether legal, factual, objective, or subjective, that Boeing was required under Washington law to compensate employees for time spent on its premises performing required safety and operational tasks and walking to and from workstations and timeclocks while under Boeing's control.

5.67. Boeing further failed to pay Plaintiffs and other Class Members for all hours worked by failing to compensate Plaintiffs and other Class Members for all time they recorded in timeclocks.

5.68. Boeing only paid Plaintiffs and other Class Members according to scheduled hours instead of actual time recorded by Plaintiffs and other Class Members in timeclocks while on Boeing's premises, under Boeing's control, and while required to comply with Boeing's safety and operational rules.

5.69. Plaintiffs and other Class Members routinely clocked in prior to the start of and/or clocked out after the end of their scheduled hours, while on Boeing's premises, under Boeing's control, and while required to comply with Boeing's safety and operational rules.

5.70. Boeing did not compensate Plaintiffs and other Class Members for all time recorded in Boeing's timeclocks.

5.71. Instead, Boeing only compensated Plaintiffs and other Class Members for their scheduled hours.

5.72. Boeing's timeclock records and Boeing's pay records will demonstrate that Boeing failed to compensate Plaintiffs and other Class Members for all time recorded in Boeing's



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

timeclocks and that, instead, Boeing only paid Plaintiffs and other Class Members for their scheduled hours.

5.73. For example, on January 26, 2026, Plaintiff Crockett clocked in to Boeing's timeclock at 9:51 pm for his shift scheduled from 10:00 p.m. (on January 26) to 5:30 a.m. (on January 27). While Crockett was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Crockett for the approximately 9 minutes between when Crockett clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.74. As an additional example, on January 24, 2026, Plaintiff Crockett clocked in to Boeing's timeclock at 9:37 pm for his shift scheduled from 10:00 p.m. (on January 24) to 5:30 a.m. (on January 25). While Crockett was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Crockett for the approximately 23 minutes between when Crockett clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.75. As an additional example, on January 17, 2026, Plaintiff Crockett clocked in to Boeing's timeclock at 9:50 pm for his shift scheduled from 10:00 p.m. (on January 27) to 5:30 a.m. (on January 18). While Crockett was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Crockett for the approximately 10 minutes between when Crockett clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.76. As an additional example, on December 19, 2025, Plaintiff Crockett clocked in to Boeing's timeclock at 9:56 pm for his shift scheduled from 10:00 p.m. (on December 19) to 5:30 a.m. (on December 20). While Crockett was clocked in, he was on Boeing's premises, under



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Crockett for the approximately 4 minutes between when Crockett clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.77. As an additional example, on December 12, 2025, Plaintiff Crockett clocked in to Boeing's timeclock at 9:54 pm for his shift scheduled from 10:00 p.m. (on December 12) to 5:30 a.m. (on December 13). While Crockett was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Crockett for the approximately 6 minutes between when Crockett clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.78. For example, on March 13, 2026, Plaintiff Cloutier clocked in to Boeing's timeclock at 1:21pm for his shift scheduled from 1:30 p.m. to 10:30 p.m. While Cloutier was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Cloutier for the approximately 9 minutes between when Cloutier clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.79. For example, on September 17, 2025, Plaintiff Kirk clocked in to Boeing's timeclock at 1:45 p.m. for his shift scheduled from 2:00 p.m. (on September 17) to 2:00 a.m. (on September 18). While Kirk was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Kirk for the approximately 15 minutes between when Kirk clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

5.80. As an additional example, on September 22, 2025, Plaintiff Kirk clocked in to Boeing's timeclock at 1:37 p.m. for his shift scheduled from 2:00 p.m. (on September 22) to 2:00 a.m. (on September 23). While Kirk was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Kirk for the approximately 23 minutes between when Kirk clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.81. As an additional example, on September 24, 2025, Plaintiff Kirk clocked in to Boeing's timeclock at 1:43 p.m. for his shift scheduled from 2:00 p.m. to 10:30 p.m. While Kirk was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Kirk for the approximately 17 minutes between when Kirk clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.82. As an additional example, on October 8, 2025, Plaintiff Kirk clocked in to Boeing's timeclock at 1:48 p.m. for his shift scheduled from 2:00 p.m. to 10:30 p.m. While Kirk was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Kirk for the approximately 12 minutes between when Kirk clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.83. As an additional example, on November 4, 2025, Plaintiff Kirk clocked in to Boeing's timeclock at 1:52 p.m. for his shift scheduled from 2:00 p.m. to 10:30 p.m. While Kirk was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Kirk for the approximately 8 minutes between when Kirk clocked in and the beginning of his scheduled hours. Boeing's



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.84. For example, on information and belief, on November 11, 2022; November 16, 2022; November 21, 2022; December 6, 2022; December 14, 2022; December 19, 2022; and December 20, 2022, Plaintiff Figueroa clocked in to Boeing's timeclock several minutes before the start of his scheduled shift. While Figueroa was clocked in, he was on Boeing's premises, under Boeing's control, and was required to comply with Boeing's safety and operational rules. Boeing did not compensate Figueroa for the several minutes between when Figueroa clocked in and the beginning of his scheduled hours. Boeing's failure to pay for that time constitutes the unlawful withholding of wages under Washington law. *See, e.g.*, § VII.7.1-7.14, *infra*.

5.85. Boeing intended for and knew that Plaintiffs and other Class Members were required to be on Boeing's premises, under Boeing's control, and comply with Boeing's safety and operational rules while clocked in.

5.86. Boeing had access to timeclock records showing the precise times when Plaintiffs and other Class Members clocked in and out.

5.87. Boeing knew that it was not paying for all time recorded by Plaintiffs and other Class Members on Boeing's timeclocks.

5.88. Boeing had the ability to record and compensate Plaintiffs and other Class Members for all time Plaintiffs and other Class Members were clocked in but chose to only compensate Plaintiffs and other Class Members for their scheduled hours.

5.89. Boeing's decision to exclude this time from compensation was uniform, deliberate, and implemented across its secured facilities. Plaintiffs and other Class Members performed required duties and remained subject to Boeing's control during that uncompensated time.

5.90. Boeing knew that Plaintiffs and other Class Members were required to comply with its safety and operational rules and to perform mandatory activities within secured facilities while clocked in.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

5.91. Boeing's decision to exclude this time from compensation was deliberate and reflected a uniform corporate policy adopted to reduce labor costs, not the result of administrative oversight, clerical error, or a bona fide legal or factual dispute.

5.92. For example, for the shift Crockett worked on January 17, 2026, Boeing did not compensate Plaintiff Crockett with wages for the approximately 10 minutes during which he was clocked in, and while he was required to be on Boeing's premises, under Boeing's control, and comply with Boeing's safety and operational rules, prior to the start of his scheduled shift at 10:00 p.m. Boeing excluded this time from Crockett's wages, and this exclusion, for this shift, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Crockett with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.93. For example, for the shift Cloutier worked on March 13, 2026, Boeing did not compensate Plaintiff Cloutier with wages for the approximately 9 minutes during which he was clocked in, and while he was required to be on Boeing's premises, under Boeing's control, and comply with Boeing's safety and operational rules, prior to the start of his scheduled shift at 1:30 p.m. Boeing excluded this time from Cloutier's wages, and this exclusion, for this shift, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Cloutier with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.94. For example, for the shift Kirk worked on November 4, 2025, Boeing did not compensate Plaintiff Kirk with wages for the approximately 8 minutes during which he was clocked in, and while he was required to be on Boeing's premises, under Boeing's control, and comply with Boeing's safety and operational rules, prior to the start of his scheduled shift at 2:00 p.m. Boeing excluded this time from Kirk's wages, and this exclusion, for this shift, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

and/or should have known that its failure to pay Kirk with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.95. For example, on information and belief, for the shifts Figueroa worked on November 11, 2022; November 16, 2022; November 21, 2022; December 6, 2022; December 14, 2022; December 19, 2022; and December 20, 2022, Boeing did not compensate Plaintiff Figueroa with wages for the several minutes during which he was clocked in, and while he was required to be on Boeing's premises, under Boeing's control, and comply with Boeing's safety and operational rules, prior to the start of his scheduled shifts. Additionally, prior to clocking in for every shift Figueroa had at Boeing, Boeing required Figueroa to wear personal protective gear, which he had to obtain from a vending machine by using his badge. Boeing excluded this time from Figueroa's wages, and this exclusion, for this shift, was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Figueroa with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.96. Boeing did not compensate Plaintiffs and other Class Members with wages for all time Plaintiffs and other Class Members were clocked in. Instead, Boeing only compensated Plaintiffs and other Class Members for their scheduled hours. Boeing knowingly, purposely, and intentionally excluded this time from Plaintiffs' and other Class Members' wages. This exclusion was not the result of carelessness or error, whether administrative, clerical, or otherwise. Rather, Boeing knew and/or should have known that its failure to pay Plaintiffs and other Class Members with these wages was contrary to Washington law, in particular WAC 296-126-002(8).

5.97. Boeing's management and human resources personnel were aware that Plaintiffs and other Class Members performed these activities on Boeing's premises under Boeing's control and that Plaintiffs and other Class Members were not compensated for this time.

5.98. There is no legitimate or reasonably debatable dispute, whether legal, factual, objective, or subjective, that Boeing was required under Washington law to compensate employees



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

for all time clocked in while they were required to be on Boeing's premises, under Boeing's control, and comply with Boeing's safety and operational rules.

5.99. Boeing created and maintained work schedules and a working environment that discouraged Plaintiffs and other Class Members from taking rest periods in compliance with Washington law.

5.100. Boeing failed to keep records of the occurrence, time, and duration of paid rest periods.

5.101. Plaintiffs and other Class Members worked shifts without receiving or taking a paid ten-minute rest period for every four hours worked.

5.102. Plaintiffs and other Class Members worked greater than three consecutive hours without or between rest periods.

5.103. Boeing failed to establish, communicate, and maintain a process for Plaintiffs and other Class Members to report and be compensated for instances when they didn't receive a rest period of at least ten minutes in duration for each four hours worked and for instances of working over three consecutive hours without or between rest periods.

5.104. Boeing failed to provide an additional ten minutes of compensation to Plaintiffs and other Class Members for missed or otherwise noncompliant rest periods or for instances of working greater than three consecutive hours without or between rest periods.

5.105. There is no legitimate or reasonably debatable dispute, whether legal, factual, objective, or subjective, that Boeing was required to compensate Plaintiffs and other Class Members with ten minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a rest period was not provided in compliance with Washington law, or for each instance in which an employee worked more than three consecutive hours without or between rest periods.

5.106. Boeing's failure to compensate Plaintiffs and other Class Members with ten minutes of wages, separate and in addition to payment for all hours worked, for each instance in



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

which a rest period was not provided in compliance with Washington law, or for each instance in which an employee worked more than three consecutive hours without or between rest periods, was knowing and intentional and was not the result of administrative oversight or clerical error.

5.107. Boeing failed to keep records of the occurrence, time, and duration of meal periods.

5.108. Plaintiffs and other Class Members worked shifts greater than five hours in duration without receiving a meal period.

5.109. Plaintiffs and other Class Members worked shifts greater than five hours in duration without receiving a meal period commencing between the second and fifth hour from the beginning of their shift.

5.110. Plaintiffs and other Class Members worked shifts greater than five hours in duration without receiving a meal period in a duration of thirty, consecutive, uninterrupted minutes.

5.111. Plaintiffs and other Class Members worked shifts greater than ten and one-half hour shifts without receiving a second meal period in a duration of thirty, consecutive, uninterrupted minutes.

5.112. Plaintiffs and other Class Members worked greater than five consecutive hours without or between meal periods.

5.113. Boeing uniformly treated all meal periods taken by Plaintiffs and other Class Members as unpaid, regardless of the timing or duration, or whether the meal period was interrupted.

5.114. For example, on information and belief, Plaintiff Figueroa and other Class Members traveled significant distances across the factory floor to reach a lunch/break room, substantially cutting into the time allotted for their 30-minute meal breaks. At the beginning of their thirty (30)-minute meal break, Plaintiffs and other Class Members would leave their workstations, travel across the factory floor (sometimes walking down several flights of stairs) following designated safety walkways to reach the lunch/break room. This travel time reduced Plaintiffs' and other Class Members' meal break time by approximately five (5) to ten (10)



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

minutes. To return to their workstations, Plaintiffs and other Class Members would be forced to cut their meal breaks even shorter to walk across the factory floor, sometimes climbing several flights of stairs, following mandatory designated safety walkways to reach their workstations. This return travel time reduced Plaintiffs' and other Class Members' meal break time by an additional five (5) to ten (10) minutes. This travel time severely reduced the duration of meal periods to only ten to twenty minutes, well below the required thirty (30)-minute minimum. As a result, Plaintiffs and other Class Members were consistently denied full thirty (30)-minute meal periods.

5.115. For example, on information and belief, Crockett did not receive a compliant thirty (30)-minute meal period, where he worked a shift that was longer than 5 hours and was entitled to a meal period: during the week of 3/16/26 through 3/20/26.

5.116. For example, on information and belief, Crockett did not receive a compliant ten (10)-minute rest period, where he worked at least four (4) hours and was entitled to a rest period: on multiple occasions during the weeks of 3/9/26 through 3/20/26.

5.117. For example, on information and belief, Kirk did not receive a compliant thirty (30)-minute meal period, where he worked a shift that was longer than 5 hours and was entitled to a meal period: on multiple occasions during the weeks of 9/12/25 through 9/25/25. During this time period, on information and belief, Kirk did not receive a second compliant thirty (30)-minute meal period, where he worked a shift that was longer than 10.5 hours and was entitled to a second meal period: on multiple occasions during the weeks of 9/12/25 through 9/25/25.

5.118. For example, on information and belief, Kirk did not receive a compliant ten (10)-minute rest period, where he worked at least four (4) hours and was entitled to a rest period: on multiple occasions during the weeks of 9/9/25 through 9/22/25.

5.119. For example, on information and belief, Cloutier did not receive a compliant thirty (30)-minute meal period, where he worked a shift that was longer than 5 hours and was entitled to a meal period: on multiple occasions during the weeks of 2/27/26 through 3/12/26. During this time period, on information and belief, Cloutier did not receive a second compliant thirty (30)-



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

minute meal period, where he worked a shift that was longer than 10.5 hours and was entitled to a second meal period: on multiple occasions during the weeks of 2/27/26 through 3/12/26.

5.120. For example, on information and belief, Cloutier did not receive a compliant ten (10)-minute rest period, where he worked at least four (4) hours and was entitled to a rest period: on multiple occasions during the weeks of 2/27/26 through 3/12/26.

5.121. For example, as a result of the above described travel time to get to a lunch/break room, Figueroa estimates, on information and belief, that he did not receive a compliant thirty (30)-minute meal period on the following dates, where he worked a shift that was longer than 5 hours and was entitled to a meal period: 11/11/22, 11/15/22, 11/16/22, 11/18/22, 11/21/22, 11/22/22, 11/23/22, 11/29/22, 11/30/22, 12/6/22, 12/14/22, 12/16/22, 12/19/22, 12/20/22, 12/22/22, 1/3/23, 1/5/23, 1/6/23, and 2/1/23.

5.122. As a result of the above described travel time to get to a lunch/break room, Figueroa further estimates, on information and belief, that he did not receive a compliant ten (10)-minute rest periods on the following dates, where he worked at least four (4) hours and was entitled to a rest period: 11/11/22, 11/15/22, 11/16/22, 11/18/22, 11/21/22, 11/22/22, 11/23/22, 11/29/22, 11/30/22, 12/6/22, 12/14/22, 12/16/22, 12/19/22, 12/20/22, 12/22/22, 1/3/23, 1/5/23, 1/6/23, and 2/1/23.

5.123. Boeing failed to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law, or for each instance in which an employee worked more than five consecutive hours without or between meal periods.

5.124. There is no legitimate or reasonably debatable dispute, whether legal, factual, objective, or subjective, that Boeing was required to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law, or



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

for each instance in which an employee worked more than five consecutive hours without or between meal periods.

5.125. Boeing's failure to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law was intentional and deliberate and was not the result of administrative or clerical errors.

5.126. There is no legitimate or reasonably debatable dispute, whether legal, factual, objective, or subjective, that Boeing was required to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law.

5.127. Plaintiffs have no legal interests adverse to members of the Class.

5.128. Plaintiffs' counsel is experienced in complex wage and hour class action litigation and has been appointed Class Counsel in scores of similar cases.

## VI. CLASS ACTION ALLEGATIONS

6.1. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(a) and (b)(3).

6.2. Numerosity: The number of Class Members is one hundred or greater and therefore, pursuant to Fed. R. Civ. P. 23(a)(1), "the class is so numerous that joinder of all members is impracticable." *See In re Wash. Mut. Mortgage-Backed Sec. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) ("[N]umerosity is presumed where the plaintiff class contains forty or more members.") (citing *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009)).

6.3. Commonality: Pursuant to Fed. R. Civ. P. 23(a)(2), there are common questions of law and fact among Plaintiffs and other Class Members including, but not limited to:

(1) Whether Boeing required Plaintiffs and other Class Members to perform employer-mandated activities such as donning and continuously wearing safety equipment,



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

following designated routes, and complying with workplace safety rules before clocking in and after clocking out.

(2) Whether Boeing's imposition of safety and operational rules, including the requirement to wear protective equipment while inside secured facilities, placed Plaintiffs and other Class Members "on duty" within the meaning of Washington wage law.

(3) Whether time spent by Plaintiffs and other Class Members within Boeing's secured facilities, while subject to those mandatory requirements, constitutes compensable "hours worked" under RCW 49.46.010 and WAC 296-126-002(8);

(4) Whether Boeing failed to pay for time spent by Plaintiffs and other Class Members within Boeing's secured facilities, while subject to those mandatory requirements;

(5) Whether Boeing's failure to pay for time spent by Plaintiffs and other Class Members within Boeing's secured facilities, while subject to those mandatory requirements was willful under RCW 49.52.050 and .070;

(6) Whether the activities Boeing required Plaintiffs and other Class Members to perform within secured facilities, including donning and continuously wearing safety equipment, were integral and indispensable to the performance of their principal work activities.

(7) Whether Boeing failed to pay Plaintiffs and other Class Members for all hours recorded in its timeclocks;

(8) Whether Boeing was required to pay Plaintiffs and other Class Members for all hours recorded in its timeclocks;

(9) Whether Boeing's failure to pay Plaintiffs and other Class Members for all hours recorded in its timeclocks was willful;

(10) Whether Boeing failed to establish, communicate, and maintain a process for Plaintiffs and other Class Members to report and be compensated for instances when



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

they didn't receive a rest period of at least ten minutes in duration for each four hours worked and for instances of working over three consecutive hours without or between rest periods.

(11) Whether Boeing was required to provide an additional ten minutes of compensation to Plaintiffs and other Class Members for missed or otherwise noncompliant rest periods or for instances of working over three consecutive hours without or between rest periods.

(12) Whether Boeing failed to provide an additional ten minutes of compensation to Plaintiffs and other Class Members for each missed or otherwise noncompliant rest period or for instances of working over three consecutive hours without or between rest periods.

(13) Whether Boeing's failure to compensate Plaintiffs and other Class Members with ten minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a rest period was not provided in compliance with Washington law, or for each instance of working greater than three consecutive hours without or between rest periods, was knowing and intentional and was not the result of administrative oversight or clerical errors.

(14) Whether Boeing failed to establish, communicate, and maintain a process for Plaintiffs and other Class Members to report and be compensated for instances when they didn't receive a compliant meal period, *i.e.*, when Plaintiffs and other Class Members worked shifts greater than five hours in duration without receiving a meal period, worked shifts greater than five hours in duration without receiving a meal period commencing between the second and fifth hour from the beginning of their shift, or worked shifts greater than five hours in duration without receiving a meal period in a duration of thirty, consecutive, uninterrupted minutes.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

(15) Whether Boeing was required to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law, or for each instance in which an employee worked more than five consecutive hours without or between meal periods.

(16) Whether Boeing failed to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law, or for each instance in which an employee worked more than five consecutive hours without or between meal periods.

(17) Whether Boeing's failure to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law or for each instance of working greater than five consecutive hours without or between meal periods was knowing and intentional and was not the result of administrative oversight or clerical errors.

6.4. Typicality: Pursuant to Fed. R. Civ. P. 23(a)(3), the named Plaintiffs claims or defenses are typical of those of the Class:

(1) Plaintiffs are members of the Class.

(2) Plaintiffs' claims arise from the same practices or course of conduct that form the basis of the Class claims.

(3) All Class claims are based on the same facts and legal theories.

(4) The injuries that Plaintiffs suffered are similar to the injuries that other Class Members suffered and are relatively small compared to the expenses and burden of individual litigation.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

6.5. Adequacy: The named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class as required by Fed R. Civ. P. 23(a)(4):

(1) There are no legal conflicts between Plaintiffs' claims and those of other Class Members.

(2) Plaintiffs have retained counsel experienced in wage and hour class action litigation.

6.6. Predominance: Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the Class predominate over any questions affecting only individual members and all claims stem from a common nucleus of operative facts and legal issues, for example:

(1) Whether Boeing required Plaintiffs and other Class Members to perform employer-mandated activities before and after clocking in, including donning and continuously wearing safety equipment, following designated routes, and complying with workplace safety rules.

(2) Whether time spent by Plaintiffs and other Class Members inside Boeing's secured facilities, while subject to those mandatory requirements, constitutes compensable "hours worked" under Washington law.

(3) Whether Boeing's uniform policies and practices governing access to secured facilities, safety compliance, and timekeeping excluded compensable work time from pay.

(4) Among Boeing's secured facilities, any differences in layout or distance between entry points and timeclocks do not alter the legal question of whether Boeing exercised control over Plaintiffs and other Class Members during this time or whether the activities Boeing required within its secured facilities, including donning and continuously wearing safety equipment, were integral and indispensable to the performance of their principal work activities under Washington law;



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

(5) Whether the time Plaintiffs and other Class Members spent walking to/from secured entry points to/from internal timeclocks is compensable;

(6) Whether the time Plaintiffs and other Class Members spent clocked in to Boeing's timeclocks before/after their scheduled shifts is compensable;

(7) Whether Boeing was required to provide an additional ten minutes of compensation to Plaintiffs and other Class Members for missed or otherwise noncompliant rest periods or for instances of working over three consecutive hours without or between rest periods;

(8) Whether Boeing failed to provide an additional ten minutes of compensation to Plaintiffs and other Class Members for each missed or otherwise noncompliant rest period or for instances of working over three consecutive hours without or between rest periods;

(9) Whether Boeing's failure to compensate Plaintiffs and other Class Members with ten minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a rest period was not provided in compliance with Washington law, or for each instance of working greater than three consecutive hours without or between rest periods, was knowing and intentional and was not the result of administrative oversight or clerical errors;

(10) Whether Boeing was required to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law, or for each instance in which an employee worked more than five consecutive hours without or between meal periods;

(11) Whether Boeing failed to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

law, or for each instance in which an employee worked more than five consecutive hours without or between meal periods;

(12) Whether Boeing's failure to compensate Plaintiffs and other Class Members with thirty minutes of wages, separate and in addition to payment for all hours worked, for each instance in which a meal period was not provided in compliance with Washington law or for each instance of working greater than five consecutive hours without or between meal periods was knowing and intentional and was not the result of administrative oversight or clerical errors;

(13) Whether the time Plaintiffs and other Class Members spent walking to/from a suitable lunch/rest break room while clocked out for a meal period is compensable;

(14) Whether the time Plaintiffs and other Class Members spent walking to/from a suitable lunch/rest break while clocked out for a meal period deprived Plaintiffs and other Class Members of a full 30-minute meal period, in violation of Washington law;

(15) Whether the time Plaintiffs and Class Members spent walking to/from a suitable lunch/rest break room while on a rest period deprived Plaintiffs and other Class Members of a full 10-minute rest period, in violation of Washington law.

These common questions can be resolved using evidence common to the Class, including Boeing's written policies, timekeeping data, payroll records, and testimony concerning its corporate practices.

6.7. Superiority: Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate in this case because a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

(1) The prosecution of separate actions by individual Class Members would risk inconsistent adjudications establishing incompatible pay practices or, as a practical matter, would preclude other employees from vindicating their rights under Washington



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

wage laws. Class treatment is superior to multiple individual suits or piecemeal litigation of the claims alleged herein.

(2) Individual Class Members have little interest in controlling separate actions because the value of individual claims is modest compared to the cost of litigation.

(3) A class action provides the most efficient means of resolving claims arising from Boeing's uniform policies governing secured facility access, safety compliance, and timekeeping; promotes judicial economy; and ensures consistent determinations regarding Boeing's uniform policies and pay practices.

(4) Concentrating these claims in a single proceeding will prevent duplication of evidence, reduce the burden on the courts, and provide an effective remedy for all affected employees under Washington law.

(5) This case presents no particular management difficulties. Plaintiffs' claims will be proven with common evidence provided by Plaintiffs and other Class Members and/or taken from or based on Boeing's own business records.

6.8. Public Policy Considerations: Employers in Washington regularly violate wage and hour and other employment laws. The value of individual employee claims is often small as compared with the relative cost of litigation. Current employees are often afraid to assert their rights out of fear of retaliation. Class actions allow Class Members who are not named in the Complaint to vindicate their rights while maintaining privacy and protection from retaliation.

6.9. Certification of this action as a class action under Fed. R. Civ. P. 23(a) and (b)(3) is appropriate because the requirements of numerosity, commonality, typicality, and adequacy are satisfied, the common questions of law and fact predominate over any individual issues, and a class action is the superior method for the fair and efficient adjudication of these claims.



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

## VII. FIRST CAUSE OF ACTION – CLASSWIDE FAILURE TO PAY FOR ALL HOURS WORKED

7.1. Plaintiffs restate and reallege the allegations set forth in all preceding paragraphs.

7.2. Under RCW 49.46 and its implementing regulation, WAC 296-126-002(8), "hours worked" includes all hours during which an employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed workplace.

7.3. The dispositive question under Washington law is whether employees are "on duty" once they enter Boeing's secured facilities. The Department of Labor & Industries Administrative Policy ES.C.2 defines that status through a functional inquiry. The policy provides that employees are "on duty" when they are "authorized or required, known or reasonably believed by the employer to be on duty on the employer's premises or at a prescribed work place." ES.C.2 § 2(A). It articulates the operative test in the form of the question: "Does the employer restrict the employee's personal activities and/or control the employee's time?" *Id.* This standard establishes that an employee need not be performing productive labor to be "on duty" if the employer exercises control over where the employee may go, what they must wear, or how they must conduct themselves.

7.4. Boeing's own security and safety rules satisfy this definition. Upon entering its secured facilities, employees were required to wear employer-mandated safety equipment, display identification badges, remain within authorized routes, and comply with all posted safety and conduct rules. These requirements restricted employees' personal activities and placed them under Boeing's control. Under ES.C.2, employees were "on duty" at that point because they could not exercise discretion over their time or movement while complying with these employer-imposed conditions.

7.5. The same policy explains that "preparatory and concluding activities are those activities that are considered integral or necessary to the performance of the job" and that "[t]hose duties performed in readiness and/or completion of the job are hours worked." ES.C.2 § 15. It



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

includes examples such as "time spent participating in mandatory security or health screenings at entry or exit of a work facility." *Id.* § 15.4. These provisions confirm that time spent performing required safety and security steps before and after clocking in is compensable under Washington law.

7.6. Under Washington precedent, an employee is "on duty" when required to be on the employer's premises and subject to the employer's control. The Supreme Court stated: "The term 'on duty' means the employee is required to be on the employer's premises and is thereby under the employer's control. The determinative factor is whether the employer controls the employee." *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 52 (2007). Boeing exercises that same degree of control when it requires employees to don and continuously wear safety equipment, follow prescribed routes, and comply with safety and conduct rules upon entering its secured facilities.

7.7. Time spent performing preparatory or concluding activities is compensable when those activities are integral or necessary to the performance of the job. The Court of Appeals held that "time spent conducting preparatory or concluding activities is compensable when those activities are integral or necessary to the performance of the job." *Port of Tacoma v. Sacks*, 19 Wn. App. 2d 295, 310 (2021). Boeing's policies requiring employees to wear high-visibility vests, badges, and other protective gear, and to comply with its safety protocols before and after reaching the timeclock, are integral and necessary to the safe performance of their principal work activities.

7.8. The United States Supreme Court, whose interpretations of the Fair Labor Standards Act are persuasive in construing the MWA, has held that the continuous workday begins when an employee first engages in a principal activity or one integral and indispensable to it. The Court explained that "any activity that is integral and indispensable to a principal activity is itself a principal activity" and that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is covered by the FLSA." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). Once Boeing required employees to don and continuously wear safety gear and comply with security



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

and safety rules, their continuous workday began, and walking to and from timeclocks remained compensable until they were released from those requirements. Similarly, the time between punching in to Boeing's timeclocks before the scheduled start time, and the time between the scheduled shift end time and the time punching out is compensable and part of the continuous workday.

7.9. Washington courts have expressly rejected the federal de minimis doctrine. The Court of Appeals held that "adoption of the de minimis doctrine, which allows otherwise compensable work to be uncompensated, would not advance the legislature's intent to protect employee wages and assure payment. We decline to do so." *Robertson v. Valley Commc'ns Ctr.*, 18 Wn. App. 2d 122, 136 (2021). Under Washington law, "employees must be compensated for all hours worked." *Id.* at 143. Regardless of the quantity, the amounts are owed under Washington law.

7.10. Together, these authorities establish that when Boeing required employees to comply with mandatory safety and operational rules inside its secured facilities before and after clocking in, those employees were "on duty," performing integral and indispensable activities within a continuous workday. Washington law requires compensation for all such time.

7.11. Applying these principles, Boeing's uniform policies and practices required Plaintiffs and other Class Members to be on duty, while on its premises and under its control, while not being paid. Employees were required to don and continuously wear safety gear, follow designated routes, and comply with safety and conduct rules immediately upon entering secured facilities, prior to clocking in, and until they exited the secured facility, after clocking out. Boeing's failure to pay for that time constitutes unlawful withholding of wages under Washington law.

7.12. Further applying these principles, Boeing's uniform policies and practices also required Plaintiffs and other Class Members to be clocked in and on duty, on its premises and under its control, while not being paid. At a minimum, Plaintiffs and other Class Members were required to don and continuously wear safety gear and comply with safety and conduct rules while



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

clocked in at Boeing's secured facilities. Boeing's failure to pay for all time recorded in the timeclock constitutes unlawful withholding of wages under Washington law.

7.13. To the extent the uncompensated time, when added to recorded hours, exceeds 40 in a workweek, Boeing is liable for overtime premiums under RCW 49.46.130.

7.14. As a result of Boeing's acts and omissions, Plaintiffs and other Class Members have suffered damages in amounts to be proven at trial.

## VIII. SECOND CAUSE OF ACTION – CLASSWIDE FAILURE TO COMPENSATE FOR REST PERIOD VIOLATIONS

8.1. Plaintiffs restate and reallege the allegations set forth in all preceding paragraphs.

8.2. The IWA, RCW 49.12, and its implementing regulation, WAC 296-126-092, requires employers to provide a rest period of not less than ten minutes, on the employer's time, for each four hours of working time.

8.3. Employees have an implied cause of action for violations of RCW 49.12 to protect them from conditions of labor that have a pernicious effect on their health. *Wingert v. Yellow Freight Systems, Inc.*, 146 Wn.2d 841, 850 (2002).

8.4. A rest period violation is a wage violation with employees entitled to ten minutes of additional compensation for each missed or otherwise noncompliant rest period and each instance of working greater than three consecutive hours without or between rest periods. *Id* at 849.

8.5. Boeing violated the IWA and its implementing regulation by failing to ensure Plaintiffs and other Class Members always received a ten-minute paid rest period for every four hours worked, by failing to keep records of the occurrence, time and duration of rest periods taken, by failing to implement a process for Plaintiffs and other Class Members to report and be paid for missed or otherwise noncompliant rest periods, and by creating work schedules, staffing levels and conditions of work that discouraged paid rest periods.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

8.6. Boeing violated the MWA by failing to provide an additional ten minutes of compensation to Plaintiffs and other Class Members for each missed or otherwise noncompliant rest period and for instances of working over three consecutive hours without or between rest periods.

8.7. As a result of Boeing's acts and omissions, Plaintiffs and other Class Members have been damaged in amounts as will be proven at trial.

## IX. THIRD CAUSE OF ACTION – CLASSWIDE FAILURE TO COMPENSATE FOR MEAL PERIOD VIOLATIONS

9.1. Plaintiffs restate and reallege the allegations set forth in all preceding paragraphs.

9.2. The IWA, RCW 49.12, and its implementing regulation, WAC 296-126-092, require employers to provide thirty-minute meal periods to their employees for work shifts greater than five hours in length and prohibits employees from working more than five consecutive hours without a meal period.

9.3. Employees have an implied cause of action for violations of RCW 49.12 to protect them from conditions of labor that have a pernicious effect on their health. *Wingert v. Yellow Freight Systems, Inc.*, 146 Wn.2d 841, 850 (2002).

9.4. A meal period violation is a wage violation with employees entitled to thirty minutes of additional compensation for each instance a meal period is not provided in compliance with Washington law. *Androckitis v. Virginia Mason Med. Ctr.*, 32 Wn. App. 2d 418, 443 (2024); *Hill v. Garda CL Nw., Inc.*, 191 Wn.2d 553, 560 (2018) (citing *Hill v. Garda CL Nw., Inc.*, 198 Wn. App 326, 361 (2017)).

9.5. Boeing violated the IWA and its implementing regulation by failing to provide Plaintiffs and other Class Members with meal periods in compliance with Washington law, and by creating work schedules, staffing levels, and conditions of work that caused meal periods to be missed.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

9.6. Boeing violated the MWA by failing to compensate Plaintiffs and other Class Members with thirty minutes of pay for each meal period not provided in compliance with Washington law.

9.7. Boeing violated the MWA by failing to compensate Plaintiffs and other Class Members with thirty minutes of pay for each instance a second meal period was not provided for a shift greater than ten and one-half hours in duration or for instances of working over five consecutive hours without or between meal period.

9.8. As a result of Boeing's acts and omissions, Plaintiffs and other Class Members have been damaged in amounts as will be proven at trial.

## X. FOURTH CAUSE OF ACTION – CLASSWIDE WILLFUL WITHHOLDING OF WAGES

10.1. Plaintiffs restate and reallege the allegations set forth in all preceding paragraphs.

10.2. RCW 49.52.050(2) prohibits any employer or its agents from willfully and with intent to deprive an employee of any part of wages from withholding or diverting any portion of those wages. RCW 49.52.070 provides that an employer who willfully withholds wages shall be liable for twice the amount of the wages unlawfully withheld, together with costs and reasonable attorneys' fees.

10.3. Boeing willfully withheld wages owed to Plaintiffs and other Class Members by maintaining and enforcing policies and/or practices that excluded compensable pre- and post-clock work time from pay, despite knowing that Plaintiffs and other Class Members were required to perform mandatory activities on Boeing's premises before clocking in and after clocking out.

10.4. Boeing willfully withheld wages owed to Plaintiffs and other Class Members by maintaining and enforcing policies and/or practices that excluded all time Plaintiffs and other Class Members recorded its timeclocks from their pay. Instead, Boeing only compensated Plaintiffs and other Class Members for their scheduled shifts.



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

10.5. Boeing's decision to exclude the above-referenced time from compensation was deliberate and reflected a uniform corporate policy adopted to reduce labor costs, not the result of administrative oversight, clerical error, or a bona fide legal or factual dispute.

10.6. Boeing's management and human resources personnel were aware that Plaintiffs and other Class Members performed these required activities while subject to Boeing's control, and that this time was not included in compensable hours.

10.7. There is no legitimate or reasonably debatable dispute, whether legal, factual, objective, or subjective, that Boeing was required under Washington law to compensate employees for time spent on its premises performing required safety and operational tasks and walking to and from workstations and timeclocks while under Boeing's control.

10.8. As a result of Boeing's acts and omissions, Plaintiffs and other Class Members have suffered damages in amounts to be proven at trial.

## XI. FIFTH CAUSE OF ACTION – COLLECTIVE ACTION CLAIM – FAIR LABOR STANDARDS ACT, 29 U.S.C. SECTIONS 206, 207, AND 216

11.1. Plaintiffs restate and reallege the allegations set forth in all preceding paragraphs.

11.2. Plaintiffs bring this claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 216(b), which authorizes private rights of action to recover damages for violations of the FLSA's wage and hour provisions: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. section 216(b).

11.3. Plaintiffs bring this FLSA claim on behalf of themselves, and all similarly situated individuals employed by Boeing as non-exempt employees in Washington state at any time within three years prior to the filing of the initial complaint and thereafter ("FLSA Collective").

11.4. Plaintiffs and the FLSA Collective are or were employed by Boeing within the meaning of the FLSA.

11.5. "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. section 203(d).

11.6. "'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handing, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000…" 29 U.S.C. section 203(s)(1).

11.7. At all relevant times, Boeing was an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce", within the meaning of the FLSA, 29 U.S.C. section 203. Boeing has an annual gross revenue of over $89 billion. *See* https://investors.boeing.com/investors/news/press-release-details/2026/Boeing-Reports-Fourth-Quarter-Results/default.aspx (last visited 3/20/26).

11.8. Attached hereto as **Exhibits 1-4** are Plaintiffs' consent to sue pursuant to 29 U.S.C. sections 216(b) and 256. Other FLSA Collective Members will likely sign consent to sue forms and join as opt-in plaintiffs on this claim in the future.

11.9. The FLSA requires each covered employer, such as Boeing, to compensate all non-exempt employees for all hours worked and overtime at a rate of no less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek. *See* 29



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**

U.S.C. section 207(a)(1) ("Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.").

11.10. As alleged above, in violation of 29 U.S.C., sections 206 and 207, Boeing failed to compensate Plaintiffs and FLSA Collective wages for all hours worked at the applicable minimum and overtime regular rate of pay by virtue of: (1) Boeing's policy and practice of not compensating Plaintiffs and the FLSA Collective with wages for their time spent walking from secured entry points to internal timeclocks, while under Boeing's control and while required to comply with Boeing's safety and operational rules; and (2) Boeing's policy and practice of not compensating Plaintiffs and the FLSA Collective with wages for all time clocked in, while under Boeing's control and while required to comply with Boeing's safety and operational rules (including continuously wearing required personal protective equipment), and instead only paying Plaintiffs and the FLSA Collective for their scheduled shifts.

11.11. The additional time, as described above, would entitle Plaintiffs and the FLSA Collective to (1) minimum wages in any workweek that they did not work over forty (40) hours in a workweek; and (2) overtime wages calculated at their regular rates of pay for each workweek in which they worked more than forty (40) hours. Plaintiffs and the FLSA Collective often worked at least or very close to forty (40) hours each workweek and would be entitled to overtime wages calculated at their regular rates of pay for this time.

11.12. Boeing failed to make a good faith effort to comply with the FLSA as it relates to the compensation of Plaintiffs and the FLSA Collective. Boeing knew Plaintiffs and the FLSA Collective were not being compensated: (1) for their time spent walking from secured entry points to internal timeclocks, while under Boeing's control and while required to comply with Boeing's



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

safety and operational rules; and (2) for all time clocked in, while under Boeing's control and while required to comply with Boeing's safety and operational rules (including continuously wearing required personal protective equipment), and instead only paying Plaintiffs and the FLSA Collective for their scheduled shifts. Boeing previously paid employees for this time, before making a company-wide decision to stop paying for this time. This conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. section 255(a) ("[I]f the cause of action accrues on or after May 14, 1947 – may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued…").

11.13. Plaintiffs, on behalf of themselves and the FLSA Collective, seek damages in the amount of unpaid minimum wages, overtime wages calculated at the FLSA Collective's applicable regular rate of pay, liquidated damages as provided by the FLSA, and such other legal and equitable relief as the Court deems just and proper.

11.14. Plaintiffs, on behalf of themselves and the FLSA Collective, also seek recovery of attorneys' fees and costs of suit incurred as provided by the FLSA, 29 U.S.C. section 216(b).

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Court enter an order against Boeing and granting the following relief on behalf of themselves, Class Members, and FLSA Collective Members as follows:

A. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) appointing Robert Crockett, Jeff Cloutier, Robert W. Kirk, and Levi Figueroa as Class Representatives and undersigned counsel as Class Counsel;

B. Classwide damages for unpaid wages in amounts to be proven at trial;

C. Classwide exemplary damages pursuant to RCW 49.52.070 for Boeing's willful withholding of wages;



ENTENTE LAW PLLC
315 THIRTY-NINTH AVE SW STE 13
PUYALLUP, WA 98373-3690
(253) 446-7668

D. Reasonable attorneys' fees and costs directly related to the litigation of the Class claims pursuant to RCW 49.46.090, RCW 49.48.030, and RCW 49.52.070;

E. Additional attorneys' fees as appropriate under the factors outlined in *Bowers v. Transamerica Title Ins.*, 100 Wn.2d 581, 593-597 (1983);

F. Classwide prejudgment interest on all unpaid wages pursuant to RCW 19.52.010 and other applicable law; and,

G. Certification of the fifth cause of action of this Complaint as a collective action under the FLSA, and directing the issuance of notice pursuant to 29 U.S.C. section 216(b) to all members of the FLSA Collective with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. section 216(b);

H. Damages to all members of the FLSA Collective for all unpaid minimum wages, overtime wages calculated at the applicable regular rate of pay, liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. section 206, 207, and 216.

I. Such other and further relief as the Court deems just and proper.

DATED this 30th day of March 2026.

ENTENTE LAW PLLC

*/s/ James B. Pizl*
James B. Pizl, WSBA #28969
Daniel J. Teimouri, WSBA #47965
Erica L. Molina, WSBA #57363

CROSNER LEGAL, PC
Jamie K. Serb, WSBA #62065
Zachary M. Crosner, WSBA #61644

*Attorneys for Plaintiffs*



**ENTENTE LAW PLLC**
**315 THIRTY-NINTH AVE SW STE 13**
**PUYALLUP, WA 98373-3690**
**(253) 446-7668**